**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA W.,[1] | : | Case No. 2:24-cv-4303 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DECISION AND ENTRY**

Plaintiff Jessica W. brings this case before the Court challenging the Social Security

Administration's denial of her application for Supplemental Security Income (SSI).  This case is

before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum

in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

**I.     Background**

The Social Security Administration provides Supplemental Security Income to individuals

who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,*

476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any

medically    determinable    physical    or    mental    impairment"    that    precludes    an    applicant    from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on April 21, 2022, alleging disability due to several impairments, including depression, a bad back, overweight, breathing problems, and bad hearing.  (Doc. #7-6, *PageID* #214).  After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Stacy Appleton. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 416.920.  She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 21, 2022, the application date.

Step 2: She had the following severe impairments: obesity; obstructive sleep apnea; hypertension; chronic rhinitis; adjustment disorder with mixed anxiety and depression.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability "to perform light work as defined in 20 CFR 416.967(b) except that [Plaintiff] can stand and/or walk four in an eight-hour workday. She must periodically alternate between sitting and standing, specifically after sitting or standing for a period of 30 minutes, she must have the ability stand or sit (the opposite position) for a period of five minutes without interruption to work activity. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance as that term is defined in the Dictionary of Occupational Titles, as well as occasionally stoop, kneel, and crouch. She cannot crawl. She would need to avoid exposure to atmospheric conditions including fumes, odors, dusts, gases, and poor ventilation. She would need

2

> to avoid all hazards including unprotected heights, heavy machinery, and commercial driving. She can understand, remember, and carry out simple instructions. She cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She can deal with occasional changes in a routine work setting."
>
> She has no past relevant work.

Step 5:   Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. #7-2, *PageID* #s 40-48). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since April 21, 2022, the date the application was filed.  *Id.* at 49.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 38-49), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.   **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla."  *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.     <u>Discussion</u>

Plaintiff first asserts that the ALJ erred in evaluating her obesity. (Doc. #8, *PageID* #s 502-05).  Specifically, Plaintiff argues that "it was unreasonable and unsupported for the ALJ to set aside examination findings 'other than obesity' where obesity is the impairment upon which Plaintiff's allegations of physical disability firmly if not exclusively rest." *Id.* at 503.  In response, the Commissioner maintains that the ALJ properly considered Plaintiff's obesity, as well as her other impairments, when formulating her physical residual functional capacity (RFC). (Doc. #10, *PageID* #s 518-22). Plaintiff also asserts that the ALJ erred in her evaluation of the medical opinion evidence of record, specifically, state agency consulting reviewers Dr. Schultz and Dr. Hughes, Plaintiff's primary care physician Dr. McKain, and the two state agency mental health reviewing consultants Dr. Souder and Dr. Richardson.  (Doc. #8, *PageID* #s 505-12). In contrast, the Commissioner contends that the ALJ adequately evaluated the opinion evidence pursuant to the regulations. (Doc. #10, *PageID* #s 522-31).

**The ALJ's Consideration of Plaintiff's Obesity**

First, Plaintiff argues that the ALJ erred in her consideration of and findings regarding Plaintiff's extreme obesity. (Doc. #8, *PageID* #502).

Social Security Ruling (SSR)[2] 19-02p, 2019 WL 2374244 (May 20, 2019),[3] requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4. The Ruling provides that the agency will establish obesity as a medically determinable impairment (MDI) by considering objective medical evidence from an acceptable medical source (AMS); however, the SSA "will not use a diagnosis or a statement of symptoms to establish the existence of an MDI." *Id.* at *3. The Ruling further notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires an ALJ to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." *Id.* An ALJ is not required to use any "particular mode of analysis" when assessing the effect of obesity. *Bledsoe v. Barnhart*, 165 F.App'x. 408, 411 (6th Cir. 2006). However, an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x. 574, 577

---

[2] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

[3] In SSR 19-2p, the SSA stated it would "apply [SSR 19-2p] to new applications filed on or after the applicable date of the SSR *and* to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in *any* case in which we make a determination or decision." SSR 19-2p, 2019 WL 2374244, at *5 n.14 (emphasis added). While Plaintiff's initial application was filed before May 20, 2019, her claim was still pending as of May 20, 2019, and ultimately was not decided until August 25, 2020. Thus, by its terms, SSR 19-2p applies to Plaintiff's case. *See Gray v. Kijakazi*, No. 4:20-CV-00575, 2021 WL 3891585, at *6 (W.D. Mo. Aug. 31, 2021) ("For one thing, SSR 02-1p does not apply to this case because it was rescinded and replaced by SSR 19-2p effective May 20, 2019, more than two months before the date of the ALJ's decision."); *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-01849, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021) ("The applicable date was May 20, 2019 and the regulation clearly directed the ALJ to apply SSR [19-2p] to all decisions involving obesity after it."); *Montagna v. Kijakazi*, No. 20-1227, 2022 WL 565601, at *3 n.1 (W.D. Tenn. Feb. 24, 2022).

(6th Cir. 2009) (citing *Bledsoe*, 165 F.App'x. at 411-12); SSR 19-2P, 2019 WL 2374244 (May 20, 2019). "SSR 19-2p only requires that obesity be considered and that the conclusion reached regarding its effects be explained." *Montagna v. Kijakazi*, No. 20-1227, 2022 WL 565601, at *4 (W.D. Tenn. Feb. 24, 2022).  Ultimately, "[a]n ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of [her] obesity." *Swafford v. Berryhill*, No. 1:18-CV-5, 2019 WL 1332368, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x. 435, 443 (6th Cir. 2010)). "Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the 'burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC.'" *Montagna*, 2022 WL 565601, at *3 (quoting *Lumpkin*, 2021 WL 5828692, at *7).

Moreover, SSR 19-2p provides that, when evaluating the severity of obesity, the SSA considers

> any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. [The SSA will] find, however, that the impairment(s) is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities.

2019 WL 2374244, at *3. The SSA "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s) .... [The SSA] evaluate[s] each case based on the information in the case record." *Id.* at *4. "[S]ome analysis of the aggravating tendencies on function caused by obesity, in conjunction with and upon all other severe

6

impairments found by the Hearing Officer, must be performed." *Stone v. Comm'r of Soc. Sec.*, No. 3:12-CV-197, 2013 WL 5424772, at *7 (S.D. Ohio Sept. 26, 2013) (Rice, D.J.)

In this case, Plaintiff's medical records consistently document BMI levels well above 30 and higher than a BMI of 40, which indicates the threshold of "extreme obesity." (Doc. #7-7, *PageID* #s 292, 295, 298, 301, 306, 350, 360, 368, 380, 463, 469, 473, 476, 482, 486). Regarding Steps Two and Three, the ALJ found that claimant's obesity was a severe impairment but further concluded that, even under SSR 19-2p, 2019 WL 2374244, claimant's impairment or combination of impairments did not equal a listing. (Doc. #7-2, *PageID* #40) ("The claimant has the following severe impairments: *obesity* . . . .") (emphasis added); (Doc. #7-2, *PageID* #40-43). Specifically, the ALJ explained:

> While it is recognized that the claimant's weight may well aggravate other complaints, it does not reasonably appear that the extent of her obesity, even when considered in combination with her other documented impairments, medically equals a listed impairment nor would preclude all work or reduce her functioning to a level contemplated by any Listing.

*Id.* The ALJ further engages with the evidence of claimant's obesity impairment, summarizing the evidence in the record and expressly touching on changes in Plaintiff's BMI over time. *Id.* at 44-45. Taking into consideration the evidence summarized, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for the reasons expounded upon later in the decision. *Id.* For example, the ALJ explains that, while "[p]rimary care notes since April 2021 through June 2022 detail obesity with a weight

7

over 400 points and issues with chronic rhinitis[,] . . . [Plaintiff's] exams are otherwise normal with steady gait and normal lunch exams." *Id.* The ALJ further notes that Plaintiff's primary care notes indicate she had no edema with full range of motion, intact neurological exams, no chest pain, no cough, no shortness of breath, no wheezing, and no weakness. *Id.* The ALJ also acknowledged that Plaintiff's primary care notes indicated Plaintiff was "consistently cooperative and in no acute distress." *Id.* Having considered the intensity, persistence, and limiting effects of claimant's symptoms associated with obesity, separately and in combination with the other impairments, the ALJ then turns to address the intensity, persistence, and limiting effects of claimant's symptoms "other than obesity." *Id.* at 46. This phrasing—"other than obesity"—does not, as Plaintiff alleges, "sever[] any logical bridge which might exist between the cited evidence and the severity of Plaintiff's obesity" but rather furthers the ALJ's treatment of the other severe impairments identified in Step Two and builds on the analysis the ALJ already engaged in earlier in her decision. *Id.* (citing Doc. #7-2, *PageID* #44).  Thus, the ALJ clearly considered Plaintiff' obesity in formulating the RFC.

### The ALJ's Evaluation of Medical Source Opinions

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20

C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2). The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M. v. Comm'r of Soc. Sec.*, No. 3:24-CV-182, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.) (citing *Hardy v. Comm'r of Soc. Sec.*, 554

F.Supp. 3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

An ALJ must "provide a coherent explanation of [her] reasoning," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

### *Prior Administrative Medical Finding*

State agency medical consultants, Dana Schultz, M.D., and Leon Hughes, M.D., reviewed Plaintiff's record in September 2022 and December 2022, respectively. (Doc. #7-3, *PageID* #s 81-90, 92-100). Dr. Schultz and Dr. Hughes opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and/or walk four hours and sit about six hours in an eight-hour workday; needed to periodically alternate sitting and standing; could never climb ladders, ropes, and scaffolds and could occasionally perform all other postural activities; needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and needed

to avoid all exposure to hazards such as unprotected heights, heavy machinery, and commercial driving. *Id.* at 86-87, 96-97.

The ALJ found their assessments to be "persuasive" because they were "generally consistent with and well supported by the evidence." (Doc. #7-2, *PageID* #s 46-47). The ALJ explained that Dr. Schultz and Dr. Hughes cited to specific medical findings and other evidence in support of their restrictions. *Id.* Further, the ALJ determined that evidence received after the consultants rendered their opinions does not support significantly greater or additional restrictions. *Id.* The ALJ incorporated their findings into the RFC and further defined the sit/stand option in terms of duration and remaining on task. *Id.*

Plaintiff takes issue with the ALJ's treatment of Dr. Schultz's and Dr. Hughes' opinions, arguing that "the ALJ calls only to unspecified 'evidence' in a manner which provides the reader no meaningful insight into either her application of the regulations or broader analysis," further describing the analysis as "so generalized that they could be copied-and-pasted into any decision in any other claim without alteration." (Doc. #8, *PageID* #507) (citing Doc. #7-2, *PageID* #46-47).

For the following reasons, the undersigned finds Plaintiff's argument unpersuasive. An ALJ need only articulate the reasons for the findings and conclusions that she makes in building an "accurate and logical bridge between the evidence and his conclusion." *Id.* at 9-10 (citing *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011); *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. 1999)). The ALJ has done so here. (Doc. #7-2, PageID #46-47). The ALJ first accounts for all of the evidence, documenting Plaintiff's

11

primary care records from April 2021 through August 2022 (*id.* at 44-45), Dr. Aina's examinations and treatments of Plaintiff in August 2022 (*id.* at 45), Dr. VanEstenberg's evaluations of Plaintiff in September 2022 (*id.* at 45-46), and Plaintiff's statements regarding intensity, persistence, and limiting effects of her symptoms (*id.* at 46). Having summarized the evidence in the record, the ALJ explains that she finds the state-agency medical consultants' assessments to be persuasive— specifically noting their findings that Plaintiff is "able to perform light work with additional standing and walking limit[ed] to four hours, sit/stand option, reduced postural abilities, and environmental restrictions." *Id.* at 46. The ALJ also considered the state-agency medical consultants' opinions for supportability and consistency, finding that the opinions of Dr. Schultz and Dr. Hughes are "generally consistent with and well supported by the evidence," which the ALJ had previously summarized. *Id.* at 46-47; *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("When viewed as a whole, however, the ALJ's decision shows that she indeed weighed all of the mental-health opinions presented to her . . . the ALJ's opinion on a whole was consistent with the regulations."). The ALJ further engaged with the state-agency medical consultants' opinions, noting that they "cited to specific medical findings and other evidence in support of their restrictions," which the ALJ found made them more persuasive. (Doc. #7-2, PageID #46-47). In finding the opinions of Dr. Schultz and Dr. Hughes persuasive, ALJ Appleton incorporated their findings into the RFC. *Id.*; 20 C.F.R. § 416.920c(c)(1). Furthermore, the ALJ's decision clearly contemplates—even if very briefly—the evidence already in the record, which was summarized throughout the decision. (Doc. #7-2, PageID #41-47). Thus, the ALJ has met the minimum level of articulation necessary to avoid frustrating the court's ability to determine

whether the ALJ's findings are sufficiently supported by substantial evidence. *Id.*; *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at \*8 (N.D.N.Y. Mar. 8, 2021); *See Ison v. Comm'r of Soc. Sec.*, No. 2:16-CV-464, 2017 WL 4124586, at \*13 (S.D. Ohio Sept. 18, 2017) (Marbley, D.J.) (explaining that "[t]he Sixth Circuit does not require remand where an ALJ provides minimal reasoning at step three of the five-step inquiry.") (internal citation omitted). Therefore, ALJ Appleton did not err in her treatment of the opinions of Dr. Schultz and Dr. Hughes, and the ALJ's decision is supported by substantial evidence.

### *Treating physician Christine McKain, M.D.*

Dr. McKain completed a Medical Impairment Questionnaire in August 2023, where she answered questions regarding Plaintiff's abilities and limitations. (Doc. #7-7, *PageID* #s 492-93). Dr. McKain reported that Plaintiff's diagnoses include morbid obesity, hypertension, tachycardia, GERD, hypothyroidism, irregular menses, and amnesia. *Id.* at 492. Dr. McKain opined Plaintiff could work only one hour per day, had reaching and manipulative limitations, and would need to occasionally elevate her legs. *Id.* at 493-94. Dr. McKain concluded that Plaintiff would be off task for 25 percent of the workday due to her impairments and would be absent about four days per month. *Id.*

Upon her review, the ALJ ultimately found Dr. McKain's opinion to be unpersuasive. (Doc. #7-2, *PageID* #47). The ALJ concluded that Dr. McKain's findings are "extreme and not consistent with nor supported by the evidentiary record, including Dr. McKain's own treatment records." *Id.* The ALJ noted, for example, that Plaintiff was obese with elevated blood pressure

and heart rate on exams but in no acute distress, no focal neurological deficits, no swelling or deformity in the extremities, full range of motion, and normal lung exams. *Id.* (citing Doc. #7-7, *PageID* #s 283-307). The ALJ also found that the evidence does not support difficulty with gait or decreased motor strength as Dr. McKain noted in her opinion. *Id.* The ALJ concluded that Plaintiff's weight and associated issues with joint and back pain and gait have been addressed in the residual functional capacity with reduced standing, walking, sit/stand option, reduced postural abilities, and significant environmental restrictions. *Id.*

Plaintiff takes issue with the ALJ's findings, stating that they "fail[] to create a logical evidentiary bridge between her conclusion that Dr. McKain's opinions are extreme and the treatment evidence cited." (Doc. #8, *PageID* #510). However, the ALJ's analysis of Dr. McKain's opinion is sufficient to build a logical bridge between the evidence and the result. (Doc. #7-2, *PageID* #47). The ALJ also properly considered supportability and consistency. *Id.* In her decision, ALJ Appleton acknowledges Dr. McKain's findings while, as the Commissioner aptly clarifies, finding that "Plaintiff's obesity caused pain and limitations, *but not to the extent* of the extreme limitations in Dr. McKain's opinion." (Doc. #10, *PageID* #526) (emphasis added); *see* Doc. #7-2, *PageID* #47. In formulating her RFC, the ALJ specifically cites to Dr. McKain's treatment records where she found that, while Plaintiff was obese with elevated blood pressure and heart rate, Plaintiff was not in acute distress, had no focal neurological deficits, had no swelling or deformity in her extremities, had full range of motion, and had normal lung exams. (Doc. #7-2, *PageID* #47) (citing Doc. #7-7). The ALJ explains that these records, coupled with a general lack of evidence to the contrary, indicate that Plaintiff does not have difficulty with gait or decreased motor strength,

14

at least to the extent that Dr. McKain contemplates in her findings. *Id.* However, the ALJ continues by clarifying that—even if there were evidence that Plaintiff has difficult with joint and back pain and gait—these issues have already been addressed in the RFC, especially taking into consideration Plaintiff's restrictions regarding reduced standing, walking, sit/stand options, reduced postural abilities, and other significant environmental restrictions. *Id.*

Therefore, ALJ Appleton did not err in her treatment of Dr. McKain's opinion, and the ALJ's decision is supported by substantial evidence.

### *Prior Administrative Psychological Finding*

Lastly, Plaintiff takes issue with the ALJ's treatment of state agency psychologists' findings. (Doc. #8, *PageID* #s 511-12). In formulating Plaintiff's mental RFC, ALJ Appleton considered the opinion of state agency psychologist, Janet Souder, Psy.D., who reviewed Plaintiff's records on September 22, 2022. (Doc. #7-2, *PageID* #47) (citing Doc. #7-3, *PageID* #s 81-88). Dr. Souder found that Plaintiff had mild limitations in understanding, remembering, and applying information; and moderate limitations in concentrating, persisting, or maintaining pace; and adapting or managing herself. (Doc. # 7-3, *PageID* #83). Dr. Souder opined that, in the area of sustained concentration and persistence capacities, that Plaintiff's "[s]ymptoms interfere with [her] ability to sustain close consistent attention to detail needed for work that is more complex. [She] can complete short cycle tasks and would require a calm, consistent setting with clear performance expectations and no fast-paced production demands. [Plaintiff] alleges anxiety,

15

depression and lowered motivation; [Consultative Examination] psychologist identifies deficits to insight/judgment and need for simplified tasks." *Id.* at 88.

Noting Plaintiff's reports of sadness and anxiety, restricted range of activities and places, and reduced insight or judgment and selfcare, Dr. Souder further found that Plaintiff had no significant limitations in her ability to be aware of normal hazards and take appropriate precautions and the ability to travel in unfamiliar places or use public transportation, but that she has moderate limitations in her ability to respond appropriately to changes in the work setting and her ability to set realistic goals or make plans independently of others. *Id.* As such, Dr. Souder concluded that Plaintiff "can carry out a familiar set routine despite minor changes in the workplace," that "[m]ajor changes will need to be previewed and gradually introduced," and that Plaintiff "would require supervisory support with goal-setting and planning." *Id.*

Additionally, the ALJ considered the opinion of state agency psychologist, Deryck Richardson, Ph.D., in her formulation of Plaintiff's mental RFC. (Doc. #7-2, *PageID* #47) (citing Doc. #7-3, *PageID* #s 92-99). Dr. Richardson reviewed Plaintiff's file upon reconsideration on December 23, 2022, and affirmed Dr. Souder's assessment. *Id.* at 94, 97-99.

ALJ Appleton found the prior administrative medical findings of Dr. Souder and Dr. Richardson to be "less persuasive." (Doc. #7-2, *PageID* #47). The ALJ incorporated their conclusions related to reduced complexity of tasks, reduced novelty demands, and reduced production and pace demands. However, the ALJ noted that the specific limitations have not been adopted, as these are not stated in vocationally relevant terms and do not define or explain these terms, e.g., "calm, consistent setting" and "clear performance expectations." *Id.* The ALJ also

16

found that their assessments suggest significantly greater mental restrictions than are warranted (e.g., the need for supervisory support) given the lack of mental health treatment, consistently normal mental status exams, and Dr. VanEstenberg's exam and opinion. *Id.* The ALJ noted that she has accounted for Plaintiff's depression and anxiety symptoms, reported inattention, and impaired insight and judgment by reducing the complexity of work, reduced production and pace demands, and reduced novelty demands. The ALJ noted that the above limitation fully accommodates Plaintiff's mental conditions based on the evidence. *Id.*

Plaintiff contends that the ALJ "departed from limitations opined to by these consultants without explanation." (Doc. #8, *PageID* #511). Specifically, Plaintiff avers that the ALJ failed to accommodate a significant limitation—"[m]ajor changes will need to be previewed and gradually introduced"—while also failing to explain the reasons for their exclusion. *Id.* at 512 (citing Doc. #7-3, *PageID* #s 88, 98). In her treatment of Dr. Souder and Dr. Richardson's opinions, ALJ Appleton expressly finds that "specific limitations have been adopted, as these are not stated in vocationally relevant terms and do not define or explain these terms . . ." (Doc. #7-2, *PageID* #47). The ALJ does, however, appear to permissibly translate the opined limitation at issue—fill in their opinion—into vocationally relevant terms, deeming the limitation as "reduced novelty demands." *Id.*; *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 275 (6th Cir. 2015) ("[T]here is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim. . ."). Thus, it would appear that the ALJ did not reflect the opined limitation at issue because it was not in vocationally relevant terms. Instead, the ALJ rejects the opined limitation for preview and gradual introduction because Dr. Souder and Dr. Richardson's opinions "suggest significantly greater mental

17

restrictions than it warranted," citing Plaintiff's lack of mental health treatment, consistent normal mental status exams, and an exam and opinion by consultative psychologist Dr. VanEstenberg, which the ALJ addresses earlier in the decision. *Id.* The ALJ's explanation that she omitted the limitation because it was not consistent with and supported by the evidence in the record is sufficient.

Plaintiff further avers that the term is "plainly vocationally relevant" because "the vocational expert addressed the same during her testimony at the administrative hearing." (Doc. #8, *PageID* #512) (citing Doc. #7-2, *PageID* #s 76-77). During the administrative hearing, Plaintiff's attorney asked the vocational expert whether requiring up to thirty days to implement a change would be work preclusive, which the vocational expert stated "would be not consistent with a competitive work environment . . ." *Id.* Hypothetical limitations posed to the vocational expert do not bind the ALJ to include those limitations in the RFC. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ.") (internal citation omitted); *see also Beckham v. Comm'r of Soc. Sec.*, No. 1:19-CV-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020) (Litkovitz, M.J.) ("Simply posing a hypothetical question to the [vocational expert] does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations."). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record."

*Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Here, Plaintiff's attorney permissibly posed a hypothetical—"[i]f that *would require up to 30 days for the hypothetical employee* to learn how to mark that specific product properly, is that something that's going to be tolerated"—which the vocational expert permissibly addressed. (Doc. #7-2, *PageID* #s 76-77) (emphasis added). This, however, does not require the ALJ to incorporate that limitation into the RFC, and it certainly does not transform a vocationally irrelevant term into a vocationally relevant one. Furthermore, "Social Security Ruling 00-4p provides that an ALJ may not rely on VE testimony that 'is based on underlying assumptions or definitions that are inconsistent with [SSA's] regulatory policies or definitions.'" *Cox v. Comm'r of Soc. Sec.*, No. 1:21-CV-01250, 2022 WL 6255603, at *46-47 (N.D. Ohio July 29, 2022) (Knapp, D.J.) (citing SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *3).

Therefore, the ALJ properly considered the opinion evidence of Dr. Souder and Dr. Richardson.

This court does not "weigh evidence, assess credibility, or resolve conflicts in testimony." *Masterson v. Comm'r of Soc. Sec.*, 2025 WL 31750, at *3 (6th Cir. January 28, 2025) (citing *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 588 (6th Cir. 2019)). Instead, we assess whether the ALJ has applied the correct legal standards and made factual findings that are supported by "substantial evidence." *Id.* (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020)) (other internal citations omitted). Unless the ALJ has failed to do so, this court is called to

affirm her decision. *Id.* In this case, ALJ Appleton has applied the correct legal standards and made factual findings that are supported by substantial evidence.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 30, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge